IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


ROSHUAN M. BALLARD,
       Petitioner,

vs.                              Case No. 4:08cv347/SPM/EMT

WALTER A. McNEIL,
       Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's second amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 13). Respondent filed an answer and relevant portions of the state court record (Doc. 28). Petitioner filed a reply (Doc. 31).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* Doc. 28, Exhibits).[1] Petitioner was charged in the Circuit Court for Leon County, Florida, with one count of aggravated child abuse by malicious punishment based upon his choking his eight-year-old daughter (Ex. A at 1). Following a jury trial, Petitioner was convicted as charged

_____

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (Doc. 28).

(*id.* at 62). Petitioner was adjudicated guilty and sentenced on November 3, 2003, to twenty (20) years of imprisonment (*id.* at 69–77). Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"). The First DCA reversed the conviction and sentence and remanded the case for a new trial (Ex. B). Ballard v. State, 899 So. 2d 1186 (Fla. 1st DCA 2005).

Petitioner was retried on July 19, 2005, and again convicted as charged (Ex. A at 118, Ex. C). The trial court again imposed a sentence of twenty (20) years of imprisonment (Ex. C at 239, Ex. K at 33–40). Petitioner appealed the judgment to the First DCA. On November 2, 2006, the appellate court affirmed the judgment of conviction per curiam without written opinion, with the mandate issuing December 22, 2006 (Exs. G, J). Ballard v. State, 944 So. 2d 349 (Fla. 1st DCA 2006) (Table). Petitioner did not seek further review by the Florida Supreme Court or the United States Supreme Court.

On January 11, 2007, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(b) of the Florida Rules of Criminal Procedure (Ex. K at 1–7). The trial court denied the motion on March 26, 2007 (*id.* at 22–23).

On August 2, 2007, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. K at 53–97). On August 31, 2007, the trial court denied the motion without an evidentiary hearing (*id.* at 279–86). Petitioner appealed the decision to the First DCA. The appellate court affirmed per curiam without written opinion on March 31, 2008, with the mandate issuing June 3, 2008 (Exs. M, N). Ballard v. State, 982 So. 2d 686 (Fla. 1st DCA 2008) (Table).

On May 27, 2008, Petitioner filed a petition for writ of habeas corpus in the First DCA (Ex. O). The First DCA issued an order treating the petition as a petition alleging ineffective assistance of appellate counsel (Ex. P). The court denied the petition on the merits on June 19, 2008 (Ex. Q). Ballard v. State, 991 So. 2d 899 (Fla. First DCA 2008).

Petitioner filed the instant habeas action on July 30, 2008 (Doc. 1). Respondent concedes that the petition is timely (Doc. 28 at 4).

## II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to"

_____

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the

court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing

evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.    EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for

---

[3]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
          (A)  the applicant has exhausted the remedies available in the courts of the State; or
          (B) (i)  there is an absence of available State corrective process; or
               (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. *Id.* 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. *Id.*, 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364. The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4] The Supreme Court explained, "[i]f a habeas petitioner wishes

---

[4] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." <u>Duncan</u>, 513 U.S. at 365–66. Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." <u>Baldwin v. Reese</u>, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). The <u>Baldwin</u> Court commented that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" <u>Id.</u>, 541 U.S. at 32. With regard to this statement, the Eleventh Circuit stated in <u>McNair v. Campbell</u>, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" <u>McNair</u> [<u>v. Campbell</u>], 315 F. Supp. 2d at 1184 (quoting <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred

---

[5] In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. <u>Id</u>.

from federal review. Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar. *Id.*. A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

---

[6] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. Tower, 7 F.3d at 210. To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

Id.

Within this framework, the court will review Petitioner's claims.

IV.     PETITIONER'S CLAIMS[7]

A.      Ground One: "Petitioner is convicted either; as a result of a trial that was fundamentally unfair; and/or as a result of a trial that undermined the proper functioning of the adversarial process so that the trial could not be relied on as having produced a just result; and/or the (herein itemized) violations constituted a fundamental flaw in the trial which undermined the structural integrity of the criminal process itself irrespective of prejudice and all trial errors herein identified thereby violated the 6th Amendment to the United States Constitution which states that 'In all criminal prosecutions, the accused shall enjoy the right to a speedy public trial, by an impartial jury of the state . . . wherein the crime shall have been committed . . . to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor . . .'"

---

[7] For organizational purposes, the undersigned has combined Grounds One, Two, and Four for analysis.

B.      Ground Two:  "Trial counsel was ineffective for not interjecting objections, on behalf of Petitioner, and in failing to preserve, for direct appeal review, an enormous and objectionable amount of prejudicial trial issues that collectively and cummulatively [sic] amounted to fundamental/plain error.  Trial counsel's acts or omissions prejudiced Petitioner and therefore violated Petitioner's constitutional rights to effective representation by trial counsel; guaranteed by the 6th Amendment to the United States Constitution which states that:  'In all criminal prosecutions, the accused shall enjoy the right to . . . have the assistance of counsel for his defence.'  There were no reasonable or plausible explanations for trial counsel's acts or omissions; and a result more favorable to Petitioner would have likely occurred had it not been for trial counsel's acts or omissions."

C.      Ground Four:  "Appellate Counsel was ineffective for failing to allege on direct appeal that trial counsel was ineffective for failing to object to and preserve prejudicial trial issues for direct appeal — errors apparent from the face of the record which were fundamental in nature.  Appellate counsel's acts or omissions prejudiced Petitioner which therefore violated Petitioner's constitutional right to effective representation by trial counsel; guaranteed by the 6th Amendment to the United States Constitution which state that:  'In all criminal prosecutions, the accused shall enjoy the right to . . . have the assistance of counsel for his defence.'  There were no reasonable or plausible explanations for trial counsel's acts or omissions; and a result more favorable to Petitioner would have likely occurred had it not been for trial counsel's acts or omissions."

In Ground One, Petitioner appears to assert his trial was fundamentally unfair because the prosecutor exceeded the trial court's restrictions on the use of "Williams rule evidence"[8] and made it a feature of Petitioner's trial, and the prosecutor made improper comments during opening statements and closing arguments (Doc. 13 at 5–14).[9]

In Ground Two, Petitioner asserts his trial counsel should have objected to the following alleged errors during trial:  (1) the testimony of Mary Brewer, a child protective services worker in California, regarding Petitioner's prior acts of child abuse (Petitioner refers to this testimony as the "Williams rule evidence");  (2) the opinion testimony of Mary Brewer; (3) the testimony of Tiffany

---

[8] Williams v. State, 110 So. 2d 654 (Fla. 1959).  Under the Williams rule, evidence of other crimes, wrongs and acts is admissible if it is relevant to and probative of a material issue even though the evidence may indicate the accused has committed other uncharged crimes or may otherwise reflect adversely upon the accused's character.  Section 90.404(2)(a), Florida Statutes, (1983), codifies the ruling in Williams and lists the purposes for which such evidence is deemed to be admissible:  proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  Buenoano v. State, 527 So. 2d 194, 197 (Fla. 1988).

[9] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

Ballard (Petitioner's wife) that Petitioner had choked her throughout their marriage; (4) the testimony of Mary Brewer, Tiffany Ballard, and Taylor Ballard (Petitioner's daughter and the victim in this case) that Petitioner's children had been removed from his and his wife's custody as a result of child dependency proceedings in California; (5) the testimony of Mary Brewer that Petitioner and his wife were required to complete anger management and parenting skills training as a condition of reunification with their children in California; (6) the prosecutor's impeaching Petitioner's testimony with statements he made in the California dependency proceedings, even though he had not been "Mirandized" prior to the statements and was not represented by counsel; (7) the improper testimony of Michael Lomack, Petitioner's cellmate at the jail, regarding his discussions with Petitioner about Petitioner's trial strategy; (8) the improper comments by the prosecutor during opening statements; and (9) the improper comments by the prosecutor during closing arguments (Doc. 13 at 6–17).

In Ground Four, Petitioner contends his appellate counsel performed ineffectively by failing to raise the issues asserted in Grounds One, Two, and Three on direct appeal (*id.* at 20–21).[10] Petitioner states he exhausted Grounds One, Two, and Four by raising them in his state habeas petition "as plain and fundamental error apparent on the face of the record" (Doc. 13 at 14, 18, 21).

Respondent contends that to the extent Petitioner raises a due process violation based upon the denial of his right to a fair trial, Petitioner failed to present this claim to the state courts (Doc. 28 at 7). Furthermore, even if Petitioner raised this due process claim in his state habeas petition, the claim was not properly presented, pursuant to the firmly established state procedural rule that habeas corpus cannot be used to litigate or re-litigate issues which could have been or were raised on direct appeal (*id.* at 7–9 (citing <u>Breedlove v. Singletary</u>, 595 So. 2d 8, 10 (Fla. 1992) ("Habeas corpus is not a second appeal and cannot be used to litigate or relitigate issues which could have been, should have been, or were raised on direct appeal.")). Respondent additionally contends Petitioner's claims of ineffective assistance of trial counsel asserted in Ground Two were not properly presented in a state habeas petition, pursuant to Rule 3.850(h) of the Florida Rules of Criminal Procedure;

---

[10] In Ground Three, Petitioner asserts additional claims of ineffective assistance of trial counsel (Doc. 13 at 18–19). The undersigned addresses those claims *infra*.

therefore, those claims were procedurally defaulted (Doc. 28 at 7–11, 23).[11]  Respondent argues that

because the claims asserted in Grounds One and Two were procedurally defaulted in the state courts,

they are barred from federal review (*id.* at 10).  Respondent concedes, however, that the ineffective

assistance of <u>appellate</u> counsel claims raised by Petitioner in Ground Four were properly raised and

exhausted in his state habeas petition (*id.* at 19).  Respondent contends Petitioner failed to show that

the First DCA's adjudication of those claims was contrary to or an unreasonable application of

clearly established federal law (*id.* at 19–23).

  In Petitioner's reply, he appears to argue that he raised his due process claim (asserted in

Ground One) in his state habeas petition by making the same substantive arguments he makes here

but using different terminology (Doc. 31 at 2).  He additionally appears to argue that the ineffective

assistance of trial counsel claims were properly raised in his state habeas petition because the

cumulative effect of those errors and the errors of appellate counsel presented not only issues of

ineffective assistance of counsel, but also an issue of fundamental fairness of the entire criminal

proceeding which deprived him of his liberty (*id.* at 3).

  Upon review of the record, it appears that in Petitioner's state habeas petition, he did not

fairly present the due process claims he asserts in Ground One of the instant petition (that is, that

the prosecutor improperly made the <u>Williams</u> rule evidence a feature of the trial and made improper

comments during opening statements and closing arguments) (Ex. O at 13–47).[12]  Additionally,

although Petitioner challenged the admission of the <u>Williams</u> rule evidence on direct appeal of his

---

[11] Rule 3.850 provides, in relevant part:

> **(h) Habeas Corpus.**  An application for writ of habeas corpus on behalf of a prisoner who
> is authorized to apply for relief by motion pursuant to this rule shall not be entertained if it appears
> that the applicant has failed to apply for relief, by motion, to the court that sentenced the applicant or
> that the court has denied the applicant relief, unless it also appears that the remedy by motion is
> inadequate or ineffective to test the legality of the applicant's detention.

Fla. R. Crim. P. 3.850(h) (2007).

[12] In his state habeas petition, Petitioner argued that the cumulative effect of the alleged errors of trial counsel
and appellate counsel resulted in a fundamentally unfair trial, in violation of the Due Process Clause of the Fourteenth
Amendment (*see* Ex. O at 13, 46).  However, this "cumulative effect" claim is the same claim asserted by Petitioner in
Ground Five of the instant petition; it is not the same claim asserted in Ground One.  Ground Five is addressed *infra*.

conviction, he presented the claim only as a matter of state law, not a federal constitutional issue (*see* Ex. D). Therefore, Petitioner failed to exhaust the issues raised in Ground One.

Petitioner may escape the federal procedural bar either by showing "cause for the default and prejudice" or establishing a "fundamental miscarriage of justice." Bailey, 172 F.3d at 1306. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999). In the instant case, Petitioner does not acknowledge his procedural default; however, he appears to allege cause by stating that his appellate counsel neglected to present these due process issues on direct appeal (Doc. 13 at 14). As will be discussed *infra*, appellate counsel was not ineffective for failing to raise the federal due process issues because they were not preserved in the trial court. Moreover, Petitioner has not presented new evidence establishing his actual innocence, so he cannot satisfy the miscarriage of justice exception. *See* Schlup, 513 U.S. at 327; Isaacs v. Head, 300 F.3d 1232, 1255 (11th Cir. 2002). Therefore, Petitioner is procedurally barred from federal review of the due process claims asserted in Ground One.

With regard to Ground Two, Petitioner raised these claims of ineffective assistance of trial counsel in his state habeas petition (Ex. O at 13–47). The First DCA clearly and expressly stated that it construed the petition as a petition alleging ineffective assistance of appellate counsel, since that was the only proper remedy that Petitioner could seek by way of his state habeas petition (Ex. P (citing Fla. R. App. P. 9.040(c) and 9.141(c)).[13] The court subsequently denied the ineffective assistance of appellate counsel claims on the merits (Ex. Q).

In Florida it is a firmly established and regularly followed rule that a court may not entertain a habeas petition seeking relief that is available through a Rule 3.850 motion. *See* Fla. R. Crim. P. 3.850(h); Reed v. State, 875 So. 2d 415, 439–40 (Fla. 2004) (claims of ineffective assistance of trial counsel are improperly raised in a petition for writ of habeas corpus); Breedlove, 595 So. 2d at 10 (claims of trial counsel's ineffectiveness should be brought in Rule 3.850 motion and are not

---

[13] Rule 9.040(c) provides that if a party seeks an improper remedy, the cause shall be treated as if the proper remedy had been sought; provided that it shall not be the responsibility of the court to seek the proper remedy. Fla. R. App. P. 9.040(c) (2007). Rule 9.141(c) authorizes the filing of petitions alleging ineffective assistance of appellate counsel. Fla. R. App. P. 9.141(c) (2007).

cognizable in habeas corpus proceedings; also, habeas corpus is not a second appeal and cannot be used to litigate or relitigate issues which could have been, should have been, or were raised on direct appeal; therefore, such claims are procedurally barred from review in habeas corpus); *see also* Thompson v. Sec'y, Dep't of Corrs., 595 F.3d 1233, 1236–37 (11th Cir. 2010) ("Under Florida law, an individual convicted of a noncapital crime must, with limited exceptions, file a collateral post-conviction challenge to his conviction and sentence via a Rule 3.850 motion rather than a habeas corpus petition.") (citations omitted); *see also* Ousley v. Sec'y for Dep't of Corrs., 269 Fed. Appx. 884, 887 (11th Cir. 2008) (unpublished) (recognizing well-established Florida procedural rule that prisoner may not use state habeas petition to collaterally attack conviction or sentence) (citing Leichtman v. Singletary, 674 So. 2d 889, 891 (Fla. 4th DCA 1996) and Fla. R. Crim. P. 3.850(h)).[14]

In the instant case, by virtue of the First DCA's order clearly and expressly stating that it construed Petitioner's habeas petition as a petition alleging ineffective assistance of appellate counsel, and in light of the firmly established procedural rule that claims collaterally challenging the legality of Petitioner's detention may not be entertained in a habeas petition, the First DCA implied that it would consider only those claims for which habeas corpus was the proper remedy, that is, Petitioner's claims ineffective assistance of appellate counsel. Therefore, Petitioner procedurally defaulted the claims of ineffective assistance of trial counsel asserted in his state habeas petition.

As with Ground One, Petitioner does not acknowledge his procedural default; however, he alleges his appellate counsel was ineffective for failing to raise the underlying trial errors on direct appeal as fundamental error and failing to raise trial counsel's alleged errors (Doc. 13 at 18). As discussed *infra*, appellate counsel was not ineffective for failing to raise these issues on direct appeal. Therefore, Petitioner is procedurally barred from federal review of his ineffective assistance of trial counsel claims asserted in Ground Two of his federal petition, *see* Bailey, 172 F.3d at 1302–03, with the exception of two claims, namely, the claim that trial counsel was ineffective for failing to object to evidence of Petitioner's involvement in a prior incident of child abuse in California, and the claim that trial counsel was ineffective for failing to object to the prosecutor's appeal to "familial sympathy" in her closing argument. Petitioner exhausted these claims because he presented them

---

[14] The undersigned cites Ousley only as persuasive authority and recognizes that the opinion is not considered binding precedent. *See* 11th Cir. R. 36-2.

in his Rule 3.850 motion (*see* Ex. K at 81–83, 92–94). Therefore, the undersigned will review the state court's adjudication of those two claims of ineffective assistance of trial counsel (as well as the ineffective assistance of trial counsel claims presented in Ground Three, *infra*, which were also presented in Petitioner's Rule 3.850 motion). Additionally, the court will review Petitioner's claims of ineffective assistance of appellate counsel asserted in Ground Four, since Respondent concedes those claims were properly raised and adjudicated in Petitioner's state habeas petition.

    1.    Ineffective Assistance of Trial Counsel

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984). To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697. Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied. Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S.

at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

As stated by the Eleventh Circuit:

> No absolute rules dictate what is reasonable performance for lawyers. [citing Strickland, 104 S.Ct. at 2065; other citations omitted]. "Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Strickland, 104 S. Ct. at 2065; [other citations omitted]. The law must allow for bold and for innovative approaches by trial lawyers. And, the Sixth Amendment is not meant "to improve the quality of legal representation," but "simply to ensure that criminal defendants receive a fair trial." Strickland, 104 S. Ct. at 2065.

Chandler, 218 F.3d at 1307. However, not every strategic decision passes constitutional muster. Whether a particular decision by counsel was a tactical one is a question of fact, Hardwick v. Crosby, 320 F.3d 1127, 1163 (11th Cir. 2003), and the state court's resolution of that issue enjoys a strong presumption of correctness. See 28 U.S.C. § 2254(e)(1); Jackson v. Herring, 42 F.3d 1350, 1367 (11th Cir. 1995); Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir. 1991). Whether a particular tactical decision was a reasonable one, however, is a question of law, Hardwick 320 F.3d at 1163; Jackson, 42 F.3d at 1367; Horton, 941 F.2d at 1462. In determining whether counsel's decision was reasonable, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. Strickland, 466 U.S. at 691. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. Id. "One of the primary duties defense counsel owes to his client is the duty to prepare himself adequately prior" to a legal proceeding. Lawhorn v. Allen, 519 F.3d 1272, 1295 (11th Cir. 2008) (quoting Magill v. Dugger, 824 F.2d 879, 886 (11th Cir. 1987)). Such preparation includes an understanding of the legal procedures and the legal significance of tactical decisions within those proceedings. Young v. Zant, 677 F.2d 792, 794, 799–800 (11th Cir. 1982) (an attorney's reliance on former law and unawareness of procedure deprived his client of effective assistance). Counsel's decision whether

to call a particular witness is a matter of trial strategy entitled to great deference. Chandler, 218 F.3d at 1314 n.14 (citing Waters v. Thomas, 46 F.3d 1506, 1512, 1518–19 (11th Cir. 1995) (en banc)). "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).[15]

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" Id. (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–406.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

### a.    Failure to object to Williams rule evidence

Petitioner contends trial counsel provided ineffective assistance by failing to object to evidence of his involvement in a prior incident of child abuse in California (Doc. 13 at 15–17). He acknowledges that trial counsel made a motion in limine to exclude the Williams rule evidence, but

---

[15] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

he contends counsel should have objected to testimony that "went beyond the In Limine ruling of the court" (*id.* at 16).

In Ground Six of Petitioner's Rule 3.850 motion, he argued that trial counsel failed to file a response to the State's notice of intent to use <u>Williams</u> rule evidence and allowed the State to introduce this evidence without "giv[ing] the <u>Williams</u> Rule Evidence, at the very least, any form of 'Text Book' adversarial contest" (Ex. K at 81–83). In Ground Seven of his motion, he argued that trial counsel was ineffective for failing to file a motion for new trial on the ground that the <u>Williams</u> rule evidence was erroneously admitted (*id.* at 84–87).

The trial court denied the claims, and the decision was affirmed by the First DCA. While the affirmance was a per curiam opinion without reasoning, this court presumes that the First DCA's decision affirms the reasoning, as well as the judgment, of the circuit court. "'Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.'" <u>Sweet v. Sec'y Dept. of Corr.</u>, 467 F.3d 1311, 1316–17 (11th Cir. 2006) (quoting <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991)); *see also* <u>Harmon v. Barton</u>, 894 F.2d 1268, 1273 (11th Cir. 1990) (noting that the "clear inference" to be drawn from a per curiam affirmance without written opinion is that the appellate court "accepted not only the judgment but the reasoning of the trial court.").

In the trial court's written opinion denying Petitioner's claims, the court identified the <u>Strickland</u> standard as the controlling legal standard for analyzing claims of ineffective assistance of counsel (Ex. K at 280, 284). Because the state court correctly identified <u>Strickland</u> as the governing precedent, Petitioner is entitled to federal habeas relief only if he demonstrates that the state court decision was based upon an unreasonable determination of the facts or was an unreasonable application of <u>Strickland</u>.

The trial court determined that the record showed that defense counsel adequately argued a motion in limine seeking to exclude the <u>Williams</u> rule evidence (Ex. K at 284). In support of this conclusion, the court attached a portion of the transcript of the pre-trial proceeding held on the motion in limine (*id.* at 296–301). Additionally, the court concluded that a motion for new trial would have had no chance of success under Rule 3.600 of the Florida Rules of Criminal Procedure,

because motions for new trial are properly granted on limited grounds related to sufficiency of the evidence, new and material evidence, and juror errors, and admission of Williams rule evidence did not fall into any of those categories (*id.* at 285). Moreover, the court found that the Williams rule evidence did not become a feature of the trial such that the probative value of Mary Brewer's testimony was outweighed by its prejudicial nature (*id.*). Therefore, the court concluded, Petitioner failed to satisfy the prejudice prong of Strickland (*id.* at 284).

The transcript attached to the Rule 3.850 order shows that defense counsel made a motion in limine to exclude any evidence of prior acts of child abuse (*id.* at 296). Counsel argued that such evidence was not sufficiently similar or relevant to the present allegations of child abuse because the prior incident did not involve choking (*id.* at 296, 299). Counsel argued further that the prejudicial effect of the evidence would outweigh its probative value (*id.*). Additionally, counsel argued that if the court admitted the evidence, it should not be made a feature of the trial, and the prosecutor should not be permitted to mention it in her opening statement (*id.* at 297, 299–300). The trial court denied defense counsel's motion to exclude the evidence, but also indicated that the prosecutor should be careful not to make the Williams rule evidence a feature of the trial (*id.* at 301). Additionally, the court suggested that defense counsel "be ready to object . . . in case you feel like it's going too far" (*id.*). During Mary Brewer's testimony (the child protective services worker from California), defense counsel objected (on relevancy grounds) to the prosecutor's questions as to whether Ms. Brewer observed any physical injuries on Ashley Ballard or Roshuan Ballard, Jr., Petitioner's other two children, during her investigation of prior child abuse allegations involving Petitioner (*id.* at 141–42). The trial court overruled the objections (*id.*).

Petitioner argues the State's presentation of Williams rule evidence went too far. He asserts the prosecutor stated during the pre-trial hearing on the motion in limine that she intended to ask the victim one question about the incident in California, and she intended to ask approximately five questions of Mary Brewer, the child protective services worker from California (Doc. 13 at 7). Petitioner contends the prosecutor went beyond this limitation by eliciting the following testimony (as summarized by Petitioner):

> On direct examination, she [Mary Brewer] testified that she was employed as a protective services worker for the County of San Diego Human Services Bureau in the year of 2000. She worked for the court intervention and investigation unit who

acted on behalf of California Law Enforcement and investigated instances of alleged child abuse and the existence of possible criminal culpability in the alleged and previous California Child Abuse process.

She investigated child abuse allegations against petitioner and his wife — the abuse of their three children. The allegations were reported anonymously.

Another worker at the Polenski Center initiated the initial intake file the night the children were brought in. Mary Brewer's part in the investigation began the next morning during her shift.

A doctor at the Polenski Children's Center made physical assessments. The investigation was compiled by an assortment of investigative agents and court personnel, independent of each other on behalf of the Juvenile Court.

The children were made dependents of the court/state when Ms. Brewer's part of the investigation was completed. Ms. Brewer concluded the children had been abused. It was her opinion and she had thought the father (petitioner) was responsible for the actions.

As a basis for her conclusions, Mary Brewer utilized the complied and written results of interviews, conducted by Child Protection Services and court investigators [and] reports generated as a result [thereof,] who interviewed witnesses of the alleged abuse of the Ballard children in the California collateral civil proceedings.
. . . .
Mary Brewer further testified the California investigation revealed that Ashley Ballard — the other daughter of petitioner — 'had some bruising and some old scars; . . . and that these injuries to Ashley . . . consisted of bruising, old scars on upper thigh and buttocks.'
. . . .
Three prosecution witnesses — Mary Brewer, Tiffany Ballard and the victim — testified that the children had been removed from the petitioner and his wife as a result of the California investigation.

Furthermore, testimony was elicited that the parents were not to be reunified with their children until they completed respective case management[,] anger management[,] and parenting skills classes. The children were reunited with petitioner and his wife. They relocated to Florida.

(Doc. 13 at 8–10, 16).

The state court's conclusion that the <u>Williams</u> rule evidence did not become a feature of the trial such that its probative value was outweighed by its prejudicial nature was a determination of

state law. Indeed, this state law issue was the basis for the First DCA's reversal of Petitioner's first conviction:

> Generally, evidence of prior bad acts or crimes is relevant to prove a material fact at issue if the evidence is not being admitted solely to prove bad character or propensity. *See* § 90.404(2)(a), Fla. Stat. (2003). However, for such evidence to be admissible, its prejudicial effect must not outweigh its probative value. § 90.403, Fla. Stat. (2003); <u>Turtle v. State</u>, 600 So. 2d 1214, 1218 (Fla. 1st DCA 1992). Here, the trial court permitted the state to make the collateral crime evidence a feature of the trial by presenting testimony regarding the evidence from four of its six witnesses; by publishing photographs of injuries allegedly sustained as a result of the alleged prior abuse; and by emphasizing the evidence in both its opening statement and its closing arguments. This was error because, by becoming a feature of the trial, the prejudicial effect of the evidence outweighed its probative value. We have considered, but reject, the state's argument that any error was harmless. *See* <u>State v. DiGuilio</u>, 491 So. 2d 1129, 1139 (Fla. 1986) (for error to be harmless, the state must satisfy the reviewing court to the exclusion of all reasonable doubt that the error did not affect the verdict); <u>Goodwin v. State</u>, 751 So. 2d 537 (Fla. 1999) (reaffirming that the <u>DiGuilio</u> test applies in criminal appeals to both constitutional and nonconstitutional error).

(Ex. B). <u>Ballard v. State</u>, 899 So. 2d 1186, 1187 (Fla. 1st DCA 2005).

"[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886, 44 L. Ed. 2d 508 (1975) ("State courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law) (citations and footnote omitted); <u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1055 (11th Cir. 1983). In light of the state court's determination that there was no legal basis for the argument that the <u>Williams</u> rule evidence became a feature of the trial such that the probative value of the evidence was outweighed by its prejudicial nature, as well as the state court's determination that a motion for new trial would not have been properly granted under Rule 3.600, Petitioner failed to show a reasonable probability that the result of the trial would have been different if counsel had objected to the <u>Williams</u> rule evidence and moved for a new trial. Therefore, the state court's denial of this ineffective assistance of counsel claims was not an unreasonable application of <u>Strickland</u>.

b.      Failure to object to prosecutor's closing argument

Petitioner contends his trial counsel should have objected to the following comments of the

prosecutor during closing arguments:

> . . . Make no mistake that the state would argue to you that the victim's mother in this case, Tiffany Ballard, is just as guilty as he is for failing to protect her child when she was strangled in September of the year 2002.

> . . . And I want you to . . . think about what that child has been through. You have heard testimony that in California in the year 2000 she was removed from the custody of her parents because she was beaten by her father. He admitted that to you on the stand.

> Those children were taken away. She was five at the time. Her little sister was three. Those children were taken away from those parents and placed in foster care at the age of five and three.

> The parents obviously got these children back somehow, and they land here in Florida. Two years later she is taken again from the custody of her parents, Tiffany Ballard and the defendant in this case. Now she is seven and her little sister is five and her little baby brother is two.

> Today she sits here and testifies before you three years after the incident and she tells you she is in foster care today. And then she has to say come in [sic] at age nine and sit in front of eight strangers in a courtroom full of people in front of her father, her biological father, the man who created her. A nine year old little child has to get up there on the stand with her dad in the room and tell you what he did to her.

> Now, how easy do you think that was for that child to do? Think about it. How easy is it to understand why that child would not want to talk about what she has been through. She has been through abuse after abuse after abuse, at the hands of both her father and her mother, her mother for failing to protect her, and her father for laying his hands on her with coat hangers, with hands, strangling the child until she passed out.

> Do you really believe that child came in here today and lied to you to protect someone? Who the heck is she protecting? She doesn't have her mother anymore. She doesn't have her father anymore. She is in foster care. Her whole world has been turned upside down, her entire life. And yet, you're to believe that that little girl came in here and lied to you about being choked by her father? Why? What on earth would a little nine year old girl, what motive could she possibly have to come in here and tell you that story?

And I agree exactly with what Ms. Dandelake [defense counsel] said my position would be on her memory. She doesn't want to remember that. She doesn't want to remember being whipped and taken away from her parents in California. She doesn't want to remember being strangled by other [sic] own father.

. . . .

. . . This child has suffered, believe me for that.

There is only one person in this courtroom today that has a reason to lie, and that is the defendant in this case, who is looking at a substantial amount of time in prison for what he did to his little girl.

What is Ms. Ballard's motive to come in here and lie? There is no reason for her to come in here and lie either. . . .

. . . .

It's pretty convenient that the defendant admits the allegations now in California. He really has no choice but to admit the allegations. Now, you heard the testimony of Ms. Brewer. . . . And I asked her if the defendant admitted the allegations then, and he denied the allegations.

And now he sits here today, he wants you to believe him, and believe that he doesn't, first of all remember that he denied the allegations. Well, I would argue that nobody forgets those types of allegations and nobody would forget —

The defendant didn't forget that he denied beating those children back then. He lied about it then and he is lying about it now, to save his own butt. Because neither him nor his wife, the mother of that child, took care of those children, and should have had those children — he abused them and she let it happen.

You have got the testimony of Mr. Lomack [Petitioner's cellmate]. Even if you set aside his testimony all together, the state has proved to you beyond and to the exclusion of a reasonable doubt that the defendant is guilty. You have only to listen to that little girl's testimony to know that he is guilty.

. . . .

I guess there is some phrase, if you want to, you know, get to the devil, you got to go to hell, whatever, something like that. Sometimes we have to rely on those people, and we are trying to give you as much as [sic] information about this case as we can. So we called Mr. Lomack, and of course, you need to evaluate his testimony just like any other witness.

. . . .

He is guilty of exactly what he is charged with. And, you know, I don't know how he could look you in the face and say he isn't. But the defendant is guilty of what exactly what [sic] he is charged with.

(*see* Doc. 13 at 12–14; Ex. C at 208–16).[16]

Petitioner contends trial counsel should have objected to the comments on the following grounds: (1) illegal bolstering of the credibility of the prosecution witnesses; (2) illegal reference to Petitioner as a "liar" and the "devil"; (3) illegal invasion of the province of the jury to decide all issues for themselves; (4) illegal advisement to the jury to disregard all evidence except the testimony of the child victim; and (5) illegal presentation of "Golden Rule" argument to the jury to play to the passions and sympathy of the jury (Doc. 13 at 17). However, in his Rule 3.850 motion, the only basis for objection he presented to the state court was the prosecutor's "use of familial sympathy" (Ex. K at 92–94). Since this court may only consider arguments that Petitioner presented to the state court, the court will review counsel's performance only to the extent that counsel failed to object to the comments as appealing to the emotions of the jury.

In the state court's written order denying this claim, the court found that the prosecutor's closing argument focused on the evidence presented, the State's burden of proof, and the reasonableness of the defense theory presented by Petitioner (Ex. K at 285). The court found that Petitioner's relationship to the victim (his daughter), her age, and the circumstances surrounding both past and current abuse were relevant to the case (*id.* at 285–86). The court also found that at no time did the prosecutor request that the jury treat the victim as one of their own children (*id.* at 286). Based upon these findings, the court concluded that there was no factual basis for Petitioner's claim that the prosecutor improperly appealed to "familial sympathy" (*id.* at 285).

In Florida, wide latitude is permitted in arguing to a jury. *See* Thomas v. State, 326 So. 2d 413 (Fla. 1975); Spencer v. State, 133 So. 2d 729 (Fla. 1961). Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments. *See* Spencer, *supra*. The prosecutor may not, however, "'inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law.'" Jones v. State, 612 So. 2d 1370, 1374 (Fla. 1993) (quoting Bertolotti v. State, 476 So. 2d 130 (Fla. 1985)). The standard for review of prosecutorial misconduct is

---

[16] Petitioner rearranged the prosecutor's allegedly objectionable comments in his federal habeas petition; however, the undersigned presents them in the order they appear in the trial transcript.

whether "the error committed was so prejudicial as to vitiate the entire trial." <u>Cobb v. State</u>, 376 So. 2d 230, 232 (Fla. 1979); *see also* <u>Jones</u>, *supra*; <u>State v. Murray</u>, 443 So. 2d 955 (Fla. 1984).

Upon review of the prosecutor's comments in context of all arguments made by the prosecutor and defense counsel during closing arguments (defense counsel argued first and last), the undersigned concludes that Petitioner failed to show that defense counsel's failure to object to the prosecutor's comments was unreasonable. Defense counsel argued first, and she emphasized that the case boiled down to whether the jury believed the victim and her mother, or whether the jury believed Petitioner (Ex. C at 187). She argued that the child's testimony was unreliable because she remembered some things with crystal clarity, yet she did not remember other things which one would expect she would have remembered (*id.* at 193–96, 204). She also referenced the evidence of the prior abuse in California and argued that the fact that there were "problems" in California did not mean that Petitioner committed the instant offense (*id.* at 201–03). Defense counsel additionally argued that Petitioner "looked right at you and told you that he didn't choke his child, that there were marital problems going on. He believes this is a made-up allegation," and "you've essentially got the testimony of the mother and daughter. The mother remembers everything, the daughter remembers hardly anything. Mr. Ballard is telling you he didn't do it." (*id.* at 202, 204).

The prosecutor's comments regarding the family situation were responsive to defense counsel's arguments and appropriately presented reasons why the evidence suggested that the victim's testimony was more credible than Petitioner's. *See* <u>United States v. Granville</u>, 716 F.2d 819, 822 (11th Cir. 1983) (finding no prosecutorial misconduct where prosecutor, in effort to support testimony of two Government witnesses, only pointed to matters in evidence: the demeanor of one witness and testimony of support witnesses, as well as a tape recording corroborating the testimony of another) (citations omitted). Furthermore, the trial court explicitly instructed the jurors that they should not be influenced by feelings of sympathy and must base their verdict on only the evidence (Ex. C at 181–84). "[A] jury is presumed . . . to follow its instructions." <u>Weeks v. Angelone</u>, 528 U.S. 225, 226, 120 S. Ct. 727, 145 L. Ed. 2d 727 (2000); *see also* <u>Raulerson v. Wainwright</u>, 753 F.2d 869, 872 (11th Cir. 1985). Moreover, defense counsel emphasized this instruction in her closing argument, which was the last argument presented to the jury before their deliberations:

The last thing I'm going to say before the judge gives you your final instruction is with respect to the Rules of Deliberation, one of the items in those Rules of Deliberation, Number 3, when you get back and start looking at them, this case must not be decided for or against anyone because you feel sorry for anyone or angry at anyone.  Obviously, the state wants you to feel sorry for the child.  But think about those Rules of Deliberation.  You need to have evidence from the witness stand about what you think happened.  Was what the state put on enough for them to have met their burden beyond and to the exclusion of all reasonable doubt?  That's what you have to ask yourselves.

Yes, if this happened to Taylor, it's a horrible, horrible situation.  But you can't feel sorry for her.  You have to look at the evidence and the law in making a determination.  You can't do it because you feel sorry for her.

(Ex. C at 219).

It is Petitioner's burden to prove <u>Strickland</u> prejudice, and he failed to demonstrate a reasonable probability that the result of his trial would have been different if counsel had objected to the prosecutor's argument on the ground that it improperly appealed to "familial sympathy" or other emotions of the jury.  Therefore, Petitioner has failed to demonstrate that the state court's denial of his claim was an unreasonable application of <u>Strickland</u>.

2.      Ineffective Assistance of Appellate Counsel

Petitioner appears to argue that his appellate counsel performed ineffectively by (1) failing to argue that trial counsel was ineffective for failing to preserve "prejudicial trial errors," and (2) failing to raise those unpreserved errors as fundamental errors (Doc. 13 at 20–21).

Respondent asserts that to the extent Petitioner raises the same ineffective assistance of appellate counsel claims as he raised in his state habeas petition, the claims are exhausted (Doc. 28 at 18).  Respondent contends Petitioner failed to show that the First DCA's denial of his claim was contrary to or an unreasonable application of <u>Strickland</u> (<i>id.</i> at 19–23).

The proper standard for evaluating a claim of ineffective assistance of appellate counsel is the <u>Strickland</u> standard.  <i>See</i> <u>Smith v. Robbins</u>, 528 U.S. 259, 285,120 S. Ct. 746, 764, 145 L. Ed. 2d 746 (2000) (citation omitted).  The two components of an ineffectiveness claim under <u>Strickland</u> are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other.  <u>Strickland</u>, 466 U.S. at 697.  The focus of inquiry under the performance prong of the <u>Strickland</u> standard is whether counsel's assistance was "reasonable considering all the

circumstances." *Id.* at 691. Appellate counsel who file a merits brief need not (and should not) raise every nonfrivolous claim but, rather, may select from among them in order to maximize the likelihood of success of on appeal. Jones v. Barnes, 463 U.S. 745, 753–54, 103 S. Ct. 3308, 3314, 77 L. Ed. 2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). To demonstrate prejudice, Petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, Petitioner would have prevailed on appeal. *See* Robbins, 528 U.S. at 285.

The Eleventh Circuit has issued several decisions interpreting the Strickland standard with regard to claims of ineffective assistance of appellate counsel. Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)). Additionally, where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits. Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992); Francois v. Wainwright, 741 F.2d 1275, 1285–86 (11th Cir. 1984). Moreover, the arguments omitted from the appeal must have been significant enough to have affected the outcome of the appeal. Nyhuis, 211 F.3d at 1344 (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988)).

In Petitioner's state habeas petition, he raised these claims of ineffective assistance of appellate counsel ( Ex. O). The First DCA denied the petition on the merits (Ex. Q). The First DCA did not cite Strickland; however, a state court need not cite to, nor even be aware of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002).

In Florida, the "prejudicial trial errors" which Petitioner contends trial counsel failed to preserve with objections, including (1) improper admission of Williams rule evidence, (2) improper admission (through Mary Brewer's testimony) of Petitioner's statements during the investigation of the California abuse allegations, (3) improper admission (through Michael Lomack's testimony) of Petitioner's statements describing his defense strategy, and (4) improper comments of the prosecutor

during opening statements and closing arguments, must generally first be raised in the trial court to be preserved for appellate review (Ex. O at 14–47). *See* Brooks v. State, 762 So. 2d 879 (Fla. 2000) (as a general rule, failing to raise a contemporaneous objection when improper closing argument comments are made waives any claim concerning such comments for appellate review); Correll v. State, 523 So. 2d 562, 566 (Fla. 1988) (even when defense counsel's prior motion in limine has been denied, defense counsel's contemporaneous objection to Williams rule evidence when it is offered at trial is essential to raise the propriety of its admission on appeal).

The record demonstrates that Petitioner's appellate counsel filed a merits brief on appeal and argued that the trial court erred under state law by permitting introduction of Williams rule evidence (Ex. D).[17]  Therefore, to the extent Petitioner argues appellate counsel was deficient for failing to challenge the trial court's ruling on that issue, his argument is without merit.  Furthermore, it is clear from the record that Petitioner's trial counsel did not preserve any of the other "prejudicial trial errors" identified by Petitioner, including a federal claim arising from the State's use of Williams rule evidence.  In light trial counsel's failure to preserve the other issues for appellate review, appellate counsel's failure to raise those issues was not constitutionally deficient.  *See* Atkins, 965 F.2d at 957; Francois, 741 F.2d at 1285–86.

To the extent Petitioner argues appellate counsel should have raised claims of ineffective assistance of trial counsel, the First DCA's denial of the claim was not unreasonable.  Florida law is well settled that claims of ineffective assistance of trial counsel are not, except under limited circumstances, cognizable on direct appeal.

> As to whether the issue of adequacy of representation can be raised for the first time on appeal, we hold that it cannot properly be raised for the first time on direct appeal, since, as was recognized in [Chester v. State, 276 So. 2d 76 (Fla. 2d DCA 1973)], 'it is a matter that has not previously been ruled upon by the trial court.'  An appellate court must confine itself to a review of only those questions which were before the trial court and upon which a ruling adverse to the appealing party was made.

---

[17] As previously noted, in addition to seeking exclusion of Mary Brewer's testimony through a motion in limine, Petitioner's trial counsel made contemporaneous objections to her testimony during trial regarding any physical injuries previously sustained by Ashley Ballard and Roshuan Ballard, Jr., Petitioner's other two children who were not victims in the instant case (*see* Ex. C at 141–42).

State v. Barber, 301 So. 2d 7, 9 (Fla. 1974); *see also* Wuornos v. State, 676 So.2d 972, 974 (Fla. 1996) (ineffective assistance of counsel claim not cognizable on direct appeal, only by collateral challenge); Johnston v. State, 841 So. 2d 349 (Fla. 2003) (claim that trial counsel was ineffective should have been raised in postconviction proceeding). Additionally, under Florida law, the proper procedural vehicle for an ineffective assistance of trial counsel claim is a Rule 3.850 motion. *See* Blanco v. Wainwright, 507 So. 2d 1377, 1384 (Fla. 1987) ("A proper and more effective remedy is already available for ineffective assistance of trial counsel under rule 3.850."); Barber, 301 So.2d at 9 ("3.850 provides a means by which this issue may properly be resolved in a correct procedural setting in the trial court where evidence may be taken.").

There are, however, "rare exceptions where appellate counsel may successfully raise the issue on direct appeal because the ineffectiveness is apparent on the face of the record and it would be a waste of judicial resources to require the trial court to address the issue." Blanco, 507 So. 2d at 1384; *see also* Thompson v. State, 764 So. 2d 630 (Fla. 1st DCA 2000). The existence of "rare exceptions," however, does not render appellate counsel's failure to raise issues of ineffective assistance of trial counsel deficient performance. *See* Blanco, 507 So. 2d at 1384 ("A proper and more effective remedy is already available for ineffective assistance of trial counsel under rule 3.850. If the issue is raised on direct appeal, it will not be cognizable on collateral review. Appellate counsel cannot be faulted for preserving the more effective remedy and eschewing the less effective."). Therefore, Petitioner failed to show that appellate counsel's failure to raise issues of ineffective assistance of trial counsel was a decision that no competent counsel would have made. Accordingly, the First DCA's denial of Petitioner's claims of ineffective assistance of appellate counsel was not an unreasonable application of Strickland.[18]

In light of the above discussion, Petitioner is not entitled to relief on Grounds One, Two, and Four.

D. Ground Three: "Trial counsel was ineffective in failing to call witnesses and to present potentially exculpatory evidence during Petitioner's trial; failed to adequately impeach the Petitioner's wife with prior inconsistent statements and criminal history; and failing to request lesser included instructions of misdemeanor/felony child abuse which

---

[18] For this reason, any attempt by Petitioner to show cause for procedurally defaulting certain ineffective assistance of trial counsel claims (due to appellate counsel's failure to raise them on direct appeal) also fails.

Case No. 4:08cv347/SPM/EMT

therefore violated Petitioner's constitutional right to effective representation by trial counsel; guaranteed by the 6th Amendment to the United States Constitution which states that: 'In all criminal prosecutions, the accused shall enjoy the right to . . . have the assistance of counsel for his defence.' There were no reasonable or plausible explanations for trial counsel's acts or omissions; and a result more favorable to Petitioner would have likely occured had it not been for trial counsel's acts or omissions."

Petitioner asserts four errors of trial counsel which he contends constitute ineffective assistance: (1) failure to call Betty Clayton as a witness, (2) failure to impeach Tiffany Ballard's testimony with prior inconsistent statements and her criminal history, (3) failure to present evidence that Taylor Ballard was mentally and emotionally unstable, and (4) failure to request a jury instruction on lesser included offenses (Doc. 13 at 18–19).

Respondent concedes Petitioner exhausted these claims by presenting them to the state court in his Rule 3.850 motion (Doc. 28 at 12). However, Respondent argues, Petitioner failed to demonstrate that the state court's adjudication of the claims was contrary to or an unreasonable application of Strickland (id. at 12–19).

As previously noted, the state court cited Strickland as the clearly established legal standard applicable to claims of ineffective assistance of counsel (Ex. K at 280). Therefore, Petitioner is entitled to relief under the AEDPA only if he shows that the state court's adjudication of the claims was an unreasonable application of Strickland.

      1.     Failure to call witnesses and present potentially exculpatory evidence

Petitioner asserts defense counsel should have presented testimony from Betty Clayton, the victim's schoolteacher (Doc. 13 at 18). Petitioner states Ms. Clayton was interviewed by law enforcement and stated she never observed bruising, injuries, or other signs of abuse on the victim (id.). Petitioner states Ms. Clayton would have also testified that she did not detect any noticeable mood changes in the victim during the time the alleged choking occurred, and the victim never reported such abuse to her (id.).

Petitioner raised this claim as Ground Three in his Rule 3.850 motion (Ex. K at 70–72). He argued that Ms. Clayton would have testified that she did not observe any "reportable incident" or "aggravating circumstances" or "factors" which indicated Taylor Ballard had been abused (id.). In support of his claim, Petitioner submitted a transcript of Ms. Clayton's testimony in Petitioner's first trial, in which Ms. Clayton testified to the following: (1) she had been a schoolteacher for thirty-two

(32) years, (2) Taylor Ballard was her student, (3) Taylor was a good student academically but had some behavioral problems; (4) during September of 2002, the month the choking occurred, Taylor was "digging in her arms" and said he wanted to kill herself; (5) she (Ms. Clayton) did not recognize any signs of physical abuse on Taylor in September of 2002; (6) it is possible that Taylor had physical marks of abuse that were covered with her clothing; (7) she was present when law enforcement officers interviewed Taylor in January of 2003 about the alleged choking, and she reported Taylor's comment about wanting to kill herself; and (8) although her students lied to her about some things, she never experienced a child lying about being physically abused by one of his or her parents (*id.* at 188–97). The trial court concluded that in light of the overwhelming evidence of Petitioner's guilt, including testimony of the victim that Petitioner choked her, testimony of an eyewitness (Petitioner's wife) who viewed Petitioner choking the victim until she went limp, and testimony of Petitioner's cellmate in whom Petitioner confided and disclosed specific details about the crime, Petitioner failed to show he was prejudiced by counsel's failure to call Ms. Clayton as a witness (*id.*).

Upon review of the evidence adduced at Petitioner's trial, the undersigned concludes that Petitioner failed to demonstrate a reasonable probability that the result of the trial would have been different if Ms. Clayton had testified. Taylor Ballard, the victim, testified that she was seven years old in 2002; Petitioner choked her when she was getting ready to go to school one morning, and she thought she "blacked out" when he choked her (Ex. C at 77–84). Tiffany Ballard, Petitioner's wife and Taylor's mother, testified that one morning in September of 2002, she and Petitioner had argued; later that morning, she was in the bathroom fixing her hair and she heard Petitioner and Taylor "fussing"; she noticed that the fussing suddenly stopped, so she left the bathroom and went to the livingroom and saw Petitioner standing in front of a chair holding Taylor by the throat; she saw that Taylor's feet were off the floor, and Taylor's arms went limp by her sides; Ms. Ballard screamed, "Taylor, Taylor!"; Petitioner let Taylor go, and she fell at his feet; Petitioner picked Taylor up, and her head fell backward; she (Ms. Ballard) then saw Taylor's arms and legs twitching, and Taylor "came to"; Petitioner put Taylor on her feet; Ms. Ballard took Taylor outside to the porch and made sure she was okay; Ms. Ballard then told Taylor to immediately go to school (*id.* at 50–57, 60–66).

Although Ms. Clayton's testimony that she did not observe physical signs of abuse on Taylor in September of 2002 would have been helpful to the defense, the value of this testimony would have been far outweighed by her testimony that Taylor had behavioral problems, she observed Taylor injuring herself that month, she was present during Taylor's interview with law enforcement (Tom Maltese, an investigator with the Tallahassee Police Department, testified that Taylor described to him in detail what Petitioner did to her) (Ex. C at 135–39)), it is possible Taylor had signs of physical abuse that were covered by her clothing, and in her thirty-two years of experience as a schoolteacher, she never experienced a child lying about physical abuse from a parent.  In light of the very limited value of Ms. Clayton's testimony and the powerful testimony of the victim and her mother, the state court's determination that Petitioner failed to show he was prejudiced by counsel's failure to call Ms. Clayton as a witness was not an unreasonable application of <u>Strickland</u>.

2.      <u>Failure to impeach Taylor Ballard (Petitioner's daughter)</u>

Petitioner contends defense counsel should have cross-examined or impeached Taylor (who was nine years old when she testified at Petitioner's second trial) with documents showing she was emotionally unstable (Doc. 13 at 18–19).  He states this evidence would have shown that Taylor was not the "innocent young child" depicted by the State (*id.* at 19).

Petitioner raised this claim as Ground Four in his Rule 3.850 motion (Ex. K at 73–76).  Petitioner identified the documents that counsel allegedly should have used as the following:  a Child Protection Team Medical Evaluation; a Judicial Review Social Study Report/Case Plan Update in child dependency Case No. 2003-DP-27 in Leon County Circuit Court; an Intake/Individual Therapy Report; two Family Connection Program Evaluations; and letters written by Taylor (*id.* at 73).  The trial court determined that the documents were immaterial and irrelevant to Petitioner's case; therefore, defense counsel was not ineffective for failing to use them (*id.* at 284).

Petitioner submitted copies of the documents with his Rule 3.850 motion.  In the Child Protection Team Medical Evaluation, Dr. Samuel H. Moorer, Jr., stated he examined Taylor on January 17, 2003 (four months after the choking) and observed no abnormal bruises, marks, or scars, and normal neurological development (Ex. K at 137).  However, Dr. Moorer also reported that Taylor told him Petitioner choked her, and "It was scary." (*id.* at 136).  Dr. Moorer noted that if the choking incident was validated, it was "very serious and certainly indicates child abuse." (*id.* at 137).

He also noted that simply Taylor's "degree of fright" over the incident indicated malicious punishment and, therefore, child abuse (*id.*).

The fact that Taylor did not have any visible physical signs of choking would have been of little value to the defense, since Dr. Moorer's examination occurred four months after the choking. Additionally, any value to the defense would have been severely lessened by Dr. Moorer's observation that Taylor's "degree of fright" indicated malicious punishment. Furthermore, defense counsel argued in her closing argument that there was no testimony from a doctor that Taylor exhibited any physical indications of being choked (*see* Ex. C at 192), which was a reasonable, strategic method of arguing the lack of physical evidence without risking the admission of testimony unfavorable to the defense. Therefore, defense counsel's failure to use Dr. Moorer's report in her cross-examination of the victim was not unreasonable.

Petitioner has likewise failed to show that cross-examining Taylor with the counseling reports would have been helpful to the defense. The Judicial Review Social Study Report/Case Plan Update showed that Taylor and her siblings completed an Intensive Crisis Counseling Program after the choking incident and seemed to be adjusting well to their current situation (Ex. K at 151). It also indicated that the children would continue with individual counseling to help them deal with detachment issues and issues surrounding the Department of Children & Families' involvement in their lives (*id.*). The Intake/Individual Therapy Report dated September 23, 2003 (one year after the choking incident) stated Taylor was exhibiting the following symptoms: disruptive behavior at home and school, disregard for rules, tantrums, lying and stealing, verbal and physical aggression, mood instability, nightmares, and sexualized behavior (*id.* at 167). Two of the letters written by Taylor and another female child evidence the "sexualized behavior" symptom, as they graphically describe sexual acts (*id.* at 172–74). The other letters from Taylor, apparently directed to the dependency court judge, stated she is happy in foster care (*id.* at 170–71). She also stated, "there were real bad people in our house and they smoke and they killed people"; and Taylor inquired whether her mother has "got it together yet" (*id.* at 170). The two Family Connection Program Evaluations document Taylor's statement to a mental health professional in December of 2003 (three months after she testified in Petitioner's first trial) that she wanted to die and planned to "take a knife to my neck" (*id.* at 168). The reports show that Taylor was hospitalized for five days as a result of her statements (*id.*

at 169). No reasonable defense attorney would have wanted the jury to know about the psychological problems exhibited by Taylor after the choking incident; and even if there was a strategic reason for bringing it before the jury, no reasonable attorney would have done so by cross-examining the nine-year-old victim with it.

Moreover, Petitioner failed to show a reasonable probability that his trial would have ended in a different result if the jury had heard Dr. Moorer's report or been aware of Taylor's psychological problems after the choking incident. Therefore, the state court's determination that Petitioner failed to demonstrate ineffectiveness of counsel was not an unreasonable application of <u>Strickland</u>.

### 3. Failure to impeach Tiffany Ballard (Petitioner's wife)

Petitioner next argues defense counsel should have impeached his wife, Tiffany, with her statement in a Petition for Injunction for Protection Against Domestic Violence that she did not believe Petitioner would hurt their children (Doc. 13 at 19). He additionally argues that although the prosecutor elicited testimony from Ms. Ballard that she and Petitioner's children were previously removed from her custody and that she had been previously convicted of two felonies, defense counsel should have inquired into the reasons for the children's removal and the nature of the prior felonies (*id.*).

Petitioner raised this claim as Ground Five in his Rule 3.850 motion (Ex. K at 77–80). The trial court rejected Petitioner's claim for the same reason it rejected Petitioner's previous claim, namely, the information was immaterial and irrelevant; therefore, defense counsel was not ineffective for failing to use it for impeachment (*id.* at 284).

The trial transcript shows that during defense counsel's cross-examination of Ms. Ballard, counsel asked her whether she had any concerns about Petitioner caring for their children even after the choking incident, and Ms. Ballard responded, "No." (Ex. C at 70–71). This statement was not inconsistent with her statement in the petition for a domestic violence injunction (*see* Ex. K at 134). Therefore, defense counsel was not deficient for failing to impeach Ms. Ballard with it.

Additionally, the jury heard Ms. Ballard's admission that at the time of Petitioner's trial (his second trial), she did not have custody of their children because she was "charged and found to have neglected [them]"; and she had not seen or spoken to them for over a year (Ex. C at 51–52, 76). Petitioner failed to show that the specific reasons for the removal of the children from her custody

were relevant to her credibility or permissible areas of inquiry by defense counsel.[19]  Therefore, defense counsel did not perform deficiently by failing to delve further into the reasons underlying the children's removal.  Moreover, Ms. Ballard testified that the children were removed from her custody after accusations of child neglect were substantiated.  Thus, although the jury did not hear the specifics of her neglect, the jury was well aware that Ms. Ballard had been deemed unfit to care for the children and that they had been removed from her custody.

Finally, Ms. Ballard testified that she had previously been convicted of two felonies (*id.* at 52).  Under Florida law, it would have been improper for defense counsel to inquire as to the nature of Ms. Ballard's prior felony convictions.  Florida Statutes section 90.610 provides that a party may attack the credibility of any witness, including the accused, by evidence of a prior felony conviction. Fla. Stat. § 90.610 (2003).  Unless the witness answers untruthfully, this inquiry is generally restricted to the existence of prior convictions and the number of convictions.  Fotopoulos v. State, 608 So. 2d 784, 791 (Fla. 1992) (citations omitted).  In the instant case, Petitioner failed to show that Ms. Ballard's testimony as to the number of her prior felony convictions was untruthful.  Therefore, defense counsel's failure to inquire further was not ineffective.  In light of the foregoing, Petitioner failed to demonstrate that the state court's denial of this claim was an unreasonable application of Strickland.

---

[19]  In the Rule 3.850 proceeding, Petitioner submitted what appears to be a psychological evaluation of the victim, Taylor (Ex. K at 167).  The report states that Taylor and her siblings were removed from Ms. Ballard's custody on August 18, 2003 (one month prior to Petitioner's first trial and nearly two years prior to his second trial), due to "issues of abuse and neglect," including being left unattended and without food, not attending school regularly, and being "confined to the bedroom while mother was engaged in other activities in the house." (*id.*).

Petitioner additionally submitted a copy of a Supplemental Petition for Dependency filed in a dependency court, in which the Department of Children & Families requested that the court adjudicate Taj-Ali Nasir Robinson, Ms. Ballard's child from another father, dependent based upon allegations of Ms. Ballard's drug use and psychological problems (Ex. K at 176–79).  The dependency petition was filed two months after Petitioner's trial (*id.*).  The petition stated that on July 9, 2005 (ten days prior to Petitioner's trial), Ms. Ballard admitted herself to a behavioral hospital seeking psychiatric assistance; and she tested positive for cocaine and marijuana upon her admission to the hospital (*id.* at 177).  There is no evidence that Ms. Ballard was still in the hospital or under the influence of drugs at the time she testified; nor do these facts, alone, suggest that her testimony was unreliable or untruthful, or that she was not competent to testify.  Additionally, Petitioner's supplemental exhibit showing that Ms. Ballard was involuntarily committed to a mental health facility in December of 2008, three and one half years after Petitioner's trial (Doc. 33), was clearly not available to defense counsel for use during Petitioner's trial.

4. <u>Failure to request jury instruction on lesser included offenses</u>

Petitioner contends defense counsel performed ineffectively by failing to request a jury instruction on lesser included offenses (Doc. 13 at 19). Petitioner acknowledges that he consented to the omission of lesser included offenses from the jury instructions, but he contends his consent was based upon counsel's advice (apparently suggesting it was erroneous advice) (*id.*).

Petitioner raised this claim as Ground Eight in his Rule 3.850 motion (Ex. K at 88–91). The trial court denied the claim on the ground that Petitioner personally agreed to the exclusion of lesser included offenses, if any were available (*id.* at 285).

The information charged Petitioner with aggravated child abuse by maliciously punishing a child, Taylor Ballard, by choking her until she blacked out, contrary to Florida Statutes Section 827.03(2) (Ex. A at 1). To prove the crime of aggravated child abuse, the State was required to prove the following two elements beyond a reasonable doubt: (1) Petitioner, acting with ill will, hatred, spite, or an evil intent, punished Taylor, and (2) Taylor was under the age of 18 years. Florida Standard Jury Instructions in Criminal Cases, Fourth Edition, Part Two: Instructions on Crimes, Chp. 16.1 Aggravated Child Abuse (The Florida Bar 2002). Under the Florida Standard Jury Instructions, there are no necessary lesser included offenses to aggravated child abuse. There are two permissive lesser included offenses, child abuse and battery. *Id.* To prove the lesser offense of child abuse, the State was required to prove Petitioner intentionally inflicted physical or mental injury upon Taylor or committed an intentional act that could reasonably be expected to result in physical or mental injury to Taylor. Florida Standard Jury Instructions in Criminal Cases, Fourth Edition, Part Two: Instructions on Crimes, Chp. 16.3 Child Abuse (The Florida Bar 2002). To prove the crime of battery, the State was required to prove that Petitioner intentionally touched or struck Taylor against her will, or he intentionally caused her bodily harm. Florida Standard Jury Instructions in Criminal Cases, Fourth Edition, Part Two: Instructions on Crimes, Chp. 8.3 Battery (The Florida Bar 2002).

It is clear from the trial transcript that the decision to not request an instruction on lesser included offenses was strategic, as evidenced by the fact that defense counsel discussed the issue with Petitioner and, following their discussion, announced that the defense was not requesting any such instructions (Ex. C at 176). The trial court asked Petitioner whether he was comfortable with

that decision, and Petitioner responded, "Yes, sir, I am." (*id.*). Furthermore, this tactical decision was reasonable in light of the theory steadfastly pursued by defense counsel throughout the trial, that is, that the choking never occurred. When a defendant relies on an exculpatory defense that, if believed, would lead to acquittals on both the greater and lesser charges, he is not entitled to an instruction on the lesser included offense. *See* United States v. Brown, 26 F.3d 119, 120 (11th Cir. 1994); *see also* United States v. Buchanan, No. 5:01cr22/RH/AK, 2008 WL 817076, at *6 (N.D. Fla. Mar. 28, 2008) (defendant convicted of distribution of methamphetamine failed to show that counsel's failure to request instruction on simple possession was ineffective; defendant used the "it ain't mine" defense, therefore, if defendant did not possess the methamphetamine, he could not have been convicted of the distribution charge). In the instant case, the use of the "it never happened" defense would have led to acquittals on child abuse and battery as well as the aggravated child abuse charge, because if Petitioner did not touch the victim, he could not have been convicted of any of any of the offenses.

Furthermore, presenting the jury with only the choice of convicting Petitioner of aggravated child abuse or acquitting him increased Petitioner's chance of acquittal, because the jury was required to acquit him if they had reasonable doubt as to whether the choking occurred or reasonable doubt as to whether Petitioner did it with ill will, hatred, spite, or evil intent. Indeed, defense counsel made this very point during her closing argument (*see* Ex. C at 205). Whereas, if the jury had the options of convicting Petitioner of child abuse or battery, there was a greater chance of conviction and a lesser chance of acquittal, because the jury was not required to acquit him if they had reasonable doubt as to ill will, hatred, spite, or evil intent; instead, they could convict him of child abuse or battery. Although this strategy involved risk, nearly all tactical decisions in criminal trials involve risk. In this case, defense counsel's strategy was not one that no competent counsel would have followed; therefore, it was not unreasonable for defense counsel to advise Petitioner to forego the instructions on child abuse and battery. This refutes Petitioner's suggestion that his choosing not to request lesser included offense instructions was unknowing.

Moreover, Petitioner's assertion that he would have been convicted of a lesser included offense is pure speculation and does not undermine this court's confidence in the outcome of his criminal proceeding. The evidence presented at Petitioner's trial was sufficient to sustain a

conviction for aggravated child abuse; therefore, even assuming without deciding that Petitioner's counsel was deficient in failing to request jury instructions on other lesser included offenses, that deficiency does not suggest that there was a reasonable probability that the outcome would have been different. *See* Strickland, 466 U.S. at 693–94 (explaining that a reviewing court should presume that the jury acted according to law). Furthermore, the jury would have performed its duties in violation of the law had it convicted Petitioner of a lesser offense in the face of sufficient evidence for the greater offense. *See id.* at 694–95 ("An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, "nullification," and the like. A defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed. The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision.").

In light of Petitioner's failure to demonstrate that defense counsel performed deficiently or that he was prejudiced by counsel's failure to request lesser included offense instructions, the state court's denial of his claim was not an unreasonable application of Strickland.

E.     Ground Five: "Appellate and trial counsel's acts and omissions denied Petitioner his due process rights guaranteed by the 14th Amendment of the United States Constitution which states that: 'No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law. . . .' In that the cummulative [sic] effect of the unpreserved and unchallenged errors resulted in a fundamentally unfair trial and undermined the proper functioning of the adversarial process so that the trial court not be relied on as having produced a just result; and additionally constitute a fundamental flaw in the trial which undermined the structural integrity of the criminal tribunal itself irrespective of prejudice."

As his final claim, Petitioner contends the cumulative effect of the alleged errors of his trial counsel and appellate counsel resulted in a fundamentally unfair trial, in violation of the Due Process Clause (Doc. 13 at 21–22).

Respondent contends to the extent Petitioner asserts a due process challenge to his conviction, he failed to present it in his state habeas petition; and even if he presented it in his state petition, it was subject to a state procedural bar because such claims are not properly raised in a state

habeas petition (Doc. 28 at 6). Respondent further argues that because the claim was procedurally barred under state law; it is barred from federal review (*id.* at 10).

Notwithstanding Petitioner's failure to exhaust this claim, the claim is without merit. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). The Supreme Court has not recognized the cumulative error doctrine in the context of ineffective assistance of counsel claims.[20] Although the Eleventh Circuit has noted, on direct appeal of a federal conviction, that the cumulative effect of several errors that are harmless by themselves could so prejudice the defendant's right to a fair trial that a new trial may be necessary,[21] the Eleventh Circuit has never expressly recognized a freestanding "cumulative effect" claim, based upon the assertion that alleged errors of the trial court, defense counsel, or the State, or a combination thereof, rendered the trial fundamentally unfair even though such errors were individually harmless or non-prejudicial, as cognizable under § 2254. *See, e.g.,* Conklin v. Schofield, 366 F.3d 1191, 1210 (11th Cir. 2004) (applying pre-AEDPA standard of review and denying claim that trial court errors and conduct of trial counsel combined to rob petitioner of fair trial and sentencing, but not relying upon Supreme Court precedent for its decision); Sims v. Singletary, 155 F.3d 1297 (11th Cir. 1998) (applying pre-AEDPA standard of review and holding that district court erred in finding that cumulative guilt stage errors prejudiced petitioner during penalty phase); Cargill v. Turpin, 120 F.3d 1366, 1386 (11th Cir. 1997) (applying pre-AEDPA standard of review and declining petitioner's invitation to entertain "cumulative error" claim because petitioner's trial was not fundamentally unfair); Dobbs v. Kemp, 790 F.2d 1400, 1505 (11th Cir.

---

[20] The Eleventh Circuit recently noted "the absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel." Forrest v. Fla. Dep't of Corr., 2009 WL 2568185, at *4 (11th Cir. Aug. 21, 2009) (unpublished). The court cautioned that the Supreme Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 5 (quoting United States v. Cronic, 466 U.S. 648, 659 n.26, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)).

[21] *See* United States v. Ramirez, 426 F.3d 1344, 1353 (11th Cir. 2005) ("[T]he 'cumulative effect' of multiple errors may so prejudice a defendant's right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible.") (quoting United States v. Thomas, 62 F.3d 1332, 1343 (11th Cir.1995)), United States v. Adams, 74 F.3d 1093, 1099–1100 (11th Cir. 1996) (citing United States v. Preciado-Cordobas, 981 F.2d 1206, 1215 n.8 (11th Cir. 1993)).

1986) (applying pre-AEDPA standard of review and denying petitioner's claim that improper prosecutorial argument and evidentiary errors rendered trial fundamentally unfair and citing Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1973)); Bronstein v. Wainwright, 646 F.2d 1048, 1056 (5th Cir. 1981) (same).[22]

In any event, cumulative error analysis should evaluate only matters determined to be in error, not the cumulative effect of non-errors. See United States v. Barshov, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."); Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Mullen cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit. We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it. Twenty times zero equals zero."); see also United States v. Hall, 455 F.3d 508, 520 (5th Cir. 2006); Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002) (where there is no single constitutional error, nothing can accumulate to the level of a constitutional violation); United States v. Hardy, 224 F.3d 752, 757 (8th Cir. 2000); Angelone, supra; Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir.1998); United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990) ("[A] cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."); United States v. Conteh, 234 Fed. Appx. 374, 2007 WL 1229043 (6th Cir. 2007). Thus, Petitioner must show error with respect to at least two of his individual claims.

---

[22] The law of the other circuit courts of appeals is mixed on the issue of whether a claim of "cumulative effect" or "cumulative error" is cognizable on federal habeas. The Fourth, Sixth and Eighth Circuits do not recognize cumulative error claims on federal habeas. See Williams v. Anderson, 460 F.3d 789, 816 (6th Cir. 2006) (claims of cumulative error are not cognizable on federal habeas because the Supreme Court has not spoken on this issue); Fisher v. Angelone, 163 F.3d 835, 852–53 (4th Cir. 1998) (ineffective assistance of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively); Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Neither cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief."). The Ninth Circuit recognizes cumulative error claims and expressly recognized Chambers v. Mississippi, 410 U.S. 284 (1973) as the clearly established federal law governing such claims. See Parle v. Runnels, 505 F.3d 922, 928–29 (9th Cir. 2007). The Tenth Circuit recognizes cumulative error claims and recognized Brecht v. Abrahamson, 507 U.S. 619 (1993) as the clearly established federal law on this issue. See Darks v. Mullin, 327 F.3d 1001, 1018 (10th Cir. 2003). The Second and Seventh Circuits recognize cumulative effect analysis of individual claims of ineffective assistance of counsel in applying the prejudice prong of Strickland. See Williams v. Washington, 59 F.3d 673, 682–84 (7th Cir. 1995); Rodriguez v. Hoke, 928 F.2d 534 (2d Cir. 1991).

In the instant case, ss previously discussed, none of the alleged errors of trial or appellate counsel that this court substantively reviewed, considered alone, approach the threshold standard of ineffective assistance of counsel. Taken together, their cumulative effect also falls far short of depriving Petitioner of effective assistance of counsel or a fundamentally unfair trial. Furthermore, the remaining claims were procedurally barred. Therefore, Petitioner is not entitled to federal habeas relief on this "cumulative effect" claim. *See* Bronstein v. Wainwright, 646 F.2d 1048 (11th Cir. 1981) ("[A] state trial must be so 'fundamentally unfair' as to amount to a denial of due process before federal habeas relief can be appropriately applied.") (internal quotation and citation omitted)); *see also* Walls v. McNeil, No. 3:06cv237/MCR, 2009 WL 3187066, at **30–31 (N.D. Fla. Sept. 30, 2009) (unpublished) (same).

## V. CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1. That the second amended petition for writ of habeas corpus (Doc. 13) be **DENIED**.

2. That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this <u>19th</u> day of November 2010.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**